We're ready to proceed with the first case. And we're going to give you a couple of minutes to start, given the unusual format, before we break in with questions. About three minutes. Sometimes we forget to do that. Just go with it if we do. But the first case is Moro-Tartaglia v. Maxian. Can everyone hear me all right? Yes. This is Ms. Watson. Yes, we can. May it please the court. My name is Bonnie Watson, and I represent plaintiff appellant Michelle Moro-Tartaglia. In recognition of the vast knowledge gap between doctors and their patients, New York's public health law 2805D requires a doctor to have a thorough informed consent conversation with her patient before obtaining consent to medical treatment. The legal standard is that at a minimum, a doctor must disclose the reasonably foreseeable risks and benefits of the proposed treatment, as well as the alternatives to the treatment, in a manner permitting the patient to make a knowledgeable decision. This case is before the court today because defendant Dr. Maxian failed to meet even this most basic responsibility. The record is undisputed that defendant did not disclose any of the alternatives or many of the reasonably foreseeable risks of the surgery she performed on plaintiffs. Thus, as a matter of law, defendant did not obtain plaintiff's informed consent, and the jury's verdict was against the evidence. At trial, defendant admitted that when she met with plaintiff and signed her up for a complicated series of foot reconstruction procedures, she and plaintiff had only a superficial discussion, which covered none of the alternatives and just a small handful of the reasonably foreseeable risks of the invasive surgical procedures defendant was proposing. Because defendant led plaintiff to believe that these procedures were much more safe and simple than they truly were, plaintiff agreed to undergo what turned out to be a disastrous total foot reconstruction surgery. She ultimately suffered severe complications, which were known risks of these procedures, but which defendant never disclosed. The jury's and trial judge's conclusions that defendant did not have to meet the disclosure duty imposed on her by the public health law were incorrect as a matter of law, and plaintiff is entitled to a new trial. The entire point of New York's informed consent statute is to enshrine in law a doctor's fiduciary duty to fully educate her patients about their treatment options. Here, however, defendant freely testified that she did not discuss any alternatives to treatment with plaintiff, although both she and her expert admitted at trial that several alternatives existed. She also testified that several risks of the surgery were reasonably foreseeable, that she had not informed plaintiff of those risks. Specifically, she testified that she only disclosed the risks of wound problems, hardware failure, and the foot not looking normal post-surgery, but she also testified that complications such as numbness, a prolonged recovery time, post-surgical pain, malunion and nonunion of the bones of the foot, follow-up surgeries, and prolonged swelling were all foreseeable risks of the surgery. Her own expert also admitted that several of these non-disclosed risks were foreseeable. In other words, defendant's own evidence established that she did not even come close to fulfilling her responsibility to have a thorough informed consent conversation with plaintiff. Ms. Watson, is it New York law that you have to apprise the patient of every single possibility, no matter how likely it is to occur? No, it's not. It's that the doctor has to disclose all reasonably foreseeable risks, but there was not testimony at trial that any of these risks were so remote as to not fall into the reasonably foreseeable range. It was more that the doctor felt apparently that she only had to disclose what was likely, and if something was merely unlikely, she felt she did not have to disclose it. Well, that was argued to the jury, but I mean, that was the whole point, right? Wasn't the argument of the defense that these were not reasonably foreseeable risks and that a reasonable practitioner wouldn't have disclosed them? Isn't that what the defense expert said? No, the defense expert actually relied very heavily on a consent form that the plaintiff signed about a month and a half after having this conversation with the doctor, but New York precedent is clear that even when there is a signed consent form, if there's clear testimony, that the consent form is not accurate and that the things on the form were not actually discussed, that the form is not dispositive of whether that conversation was had, and here, Dr. Maxian testified specifically that she went through the form, looked at it, looked at it on the stand and said that she did not actually have the conversation with plaintiffs that the form said she had, so her expert's conclusion, because it was based primarily on that form, was incorrect as a matter of law because it was against her own evidence, and what she said instead of saying that she disclosed all the reasonably foreseeable risks and all the alternatives was that she testified, as did her expert as well, that she didn't have to have a detailed conversation with plaintiffs because, quote, she came to discuss surgery, and we would argue this is a misinterpretation of the law, which would create a catch-22 where if a patient seeks out the advice of a medical specialist or expresses any interest in an elective treatment option, the doctor's duty to provide disclosures would somehow be waived because the patient was seeking expert guidance. Excuse me, this is Judge Kearse. Was the jury instructed that the doctor did not have to give certain of these instructions? That the doctor did not have to give... Was the jury instructed that the doctor did not have to have all of the instructions, give all the advice to the patient that you say was not given? The jury was instructed on the requirements of Public Health Law 20-805-D, which requires the doctor to disclose the reasonably foreseeable risks of the procedure and the alternatives. And there was no objection to the instruction, right? Not that I'm aware of, no. So the real dispute at trial was whether or not the doctor had disclosed the reasonably foreseeable risks, right? That's really what the dispute was with respect to the informed consent cause of action, right? Not really, because she testified, as did her expert, that she had only disclosed a small amount of risks and that she had not discussed any alternatives to surgery with the plaintiff. Well, the risks and the alternatives, I'm going to stay focused on risks. I mean, so the risks, Maxine said basically that these risks were so fleeting or rare that they were not reasonable to be disclosed, right? You disagreed with that, but that was the gist of her testimony, right? She did say that some of them were rare, but there was really no discussion at trial of how rare or whether they were rare enough to warrant nondisclosure. But that's for the jury to determine whether then these are reasonably foreseeable or not, right? Yes, but the jury has to have some basis in the testimony, and Dr. Maxine did not say that these were so rare that she wouldn't have had to disclose them. She said that they're improbable. They usually don't happen. But she and her own expert on examination admitted that these are known risks, that complications such as nonunion of the bones and malunion of the bones are always a known risk of this type of surgery, and that she did not have that discussion with the plaintiff. Ms. Watson, I believe you've reserved three minutes of rebuttal time. We'll hear from the appellee. If you may please accord, counsel, this is Sean Brousseau from the Napierski Law Firm in Albany for Dr. Maxine and Schenectady Regional Orthopedic Associates. Going to what the appellant was mainly discussing, which is whether the risks were reasonable or not, this is a case where a unanimous jury, properly instructed, found that Dr. Maxine did provide adequate information to Ms. Moro-Tartaglia to make a decision as to whether or not she wanted to proceed with the surgery. Both Dr. Maxine and our expert witness, Dr. Mann, testified that adequate information was communicated to Ms. Tartaglia. Plaintiff disputed that with their expert witness, Dr. Bach, and the jury made a determination between the experts and all the testimony. They made credibility determinations, and they determined that reasonable information was given to her to make an informed decision to proceed with the surgery. Much of the appellant's brief is devoted to the allegation that Dr. Maxine is claiming that she did not have to comply with the public health law because this is an elective procedure, and that is simply not the case. That argument was never made. It was argued that we should have disclosed alternatives to treatment to Ms. Moro-Tartaglia. Both our expert witness and Dr. Maxine testified that there really weren't any alternatives to treatment other than to simply accommodate the fixed deformities in her foot, that, for example, physical therapy, things along those lines, could not help these fixed deformities. Most telling, the plaintiff herself admitted that she understood, number one, that she did not have to have this surgery, and number two, that there was no risk not having the surgery. The appellants try to make this out like this is a case where a person comes to a doctor with atrial fibrillation, and the doctor is suggesting surgery. In that certain case, there are risks, potentially grave risks, to not having the surgery as well as risks to having the surgery. In this case, the testimony from our expert witness and Dr. Maxine was that there was no risk whatsoever to not having the foot surgery, and that the plaintiff knew that she did not have to have the surgery. Well, the point is that these alternatives are not alternatives at all. They're accommodations or they're sort of coping mechanisms, but they're not treatments, right? Exactly, Judge. What about pain? Did the doctor, in her description of what she normally would have said, adequately inform the patient of the possibility of continued pain after surgery? Well, there was testimony that there would obviously be pain after the surgery. The plaintiff in this case has claimed that she has basically permanent pain in the foot. Both Dr. Maxine and I believe Dr. Mann testified that that is not something that typically occurs where someone has this foot reconstructive surgery and then has to proceed with pain management. In my mind, that was probably tied up with the testimony and all the evidence in the medical negligence claim that was rejected by the jury where an expert neurologist on our end showed that there was, in fact, no objective evidence of any nerve injury sustained by the plaintiff. What we have here, basically, is a case where the mere fact that the evidence conflicted is not a basis to set aside the verdict. That is what trials are all about. There was no objection to the jury charge. There was no motion for a directed verdict that was denied and then appealed. There was no objection to the jury's decision. The jury verdict form in this case, there was sharp contrasting testimony from the plaintiff, from Dr. Maxine, from our experts, from the plaintiff's experts. The jury weighed the credibility. They came to a unanimous determination that proper information was communicated to the plaintiff. The matter was fully and exhaustively briefed before Judge Hummel, who was the judge who sat through the entire trial, who agreed that there was not grounds to set aside the verdict as against the weight of the evidence. There is no indication that the jury verdict was so against the weight of the evidence as to be a miscarriage of justice. This is basically a typical medical malpractice trial that ends with experts and witnesses disagreeing with each other and the jury trying to figure out what the proper outcome is. It's an outcome that the plaintiff was not happy with, but it is certainly, in our mind, not a miscarriage of justice, Your Honors. If Your Honors don't have any further questions, I will waive the remainder of my time. Thank you. I will hear rebuttal. Yes, thank you, Ms. Watson, again. We certainly disagree that this was a credibility dispute because, as we argued extensively in our briefings, even setting aside all of plaintiff's testimony, all of her expert's testimony, even the testimony of a descendant and her own expert, was not sufficient to show that she had given informed consent and, in fact, indicated that she definitely had not, especially on the alternatives that plaintiff had to surgery. The fact that plaintiff knew she could opt not to have surgery, that this was elective, does not mean that she understood what that meant to not have surgery versus to go with this procedure versus possibly to go with some other procedure. Descendant's expert was actually the one. What are the other procedures that were presented to the jury? Bigger shoes, you think, is an alternative treatment? It is an alternative treatment in the sense that it's something that she could do with a doctor's advice. Sure, but she could never get out of bed, too, I suppose, and that would be an alternative, but it's not a treatment, right? It's not a treatment, but an alternative to treatment doesn't have to be another treatment. It can be an alternative, which may cause the patient to continue on in their same state. It could mean that they get worse in the future. It could mean that they could have lifestyle modifications to manage it, and there's no indication that they had any discussion of what this means to her. It's not enough that she just knew that that was an option if she didn't understand what it entailed. I mean, we would liken this to issues that arise in the context of law. For example, if the judge is taking guilty pleas from defendants, you know that Federal Rule of Criminal Procedure 11 requires the judge to discuss a lengthy list of topics with the defendant in court before accepting a guilty plea. Obviously, it would be almost impossible to find a defendant that doesn't know that they have a choice whether or not to plead guilty, but that does not mean that they understand that choice. But didn't your client admit on cross that she knew that there were no risks to not having the surgery, so it's a problem that she just wasn't told enough about what it would be like to manage without surgery? Yes, that's the alternative part of it, and that she didn't understand both what that would mean for her as far as managing it, and she didn't understand it on the side, how risky these procedures actually were. And those two parts taken together lulled her into thinking that this was a much more minor procedure than it was. Thank you, Ms. Watson. We'll take the matter under advisement. Thank you. Thanks to you both. Nicely done.